The drawing is lined for color. Unlined portions are white.
[A7501]

George **KIEPURA**, Plaintiff,

v.

**LOCAL UNION 1091, UNITED STEEL-WORKERS OF AMERICA, and International Union, United Steelworkers of America, Defendants.**

**No. 71 C 394.**

United States District Court,
N. D. Illinois, E. D.

March 13, 1973.

Elmer Gertz, Chicago, Ill., for plaintiff.

Gilbert Feldman, Kleiman, Cornfield & Feldman, Chicago, Ill., for defendants.

## DECISION ON TRIAL

McMILLEN, District Judge.

This cause came on for trial by the court without a jury. The Complaint al-

leges that the plaintiff, as a member of the defendant Local Union 1091, was charged with certain violations of the Union oath and Constitution and was found guilty in a manner violative of Section 101(a)(5) of the Labor-Management Reporting and Disclosure Act of 1959 (29 U.S.C. § 411(a)(5)). Plaintiff seeks an order restoring him to good standing in the Union, together with compensatory and punitive damages, pursuant to Section 102 of the Act (29 U.S.C. § 412).

Section 101 of the Labor Management Reporting and Disclosure Act provides in pertinent part as follows (29 U.S.C. § 411):

(a)(1) *Equal rights.*—Every member of a labor organization shall have equal rights and privileges within such organization . . . to attend membership meetings, and to participate in the deliberations and voting upon the business of such meetings, subject to reasonable rules and regulations in such organization's constitution and bylaws.

(a)(2) *Freedom of speech and assembly.*—Every member of any labor organization shall have the right to meet and assemble freely with other members; and to express any views, arguments, or opinions; and to express at meetings of the labor organization his views, upon candidates in an election of the labor organization or upon any business properly before the meeting, subject to the organization's established and reasonable rules pertaining to the conduct of meetings: *Provided,* That nothing herein shall be construed to impair the right of a labor organization to adopt and enforce reasonable rules as to the responsibility of every member toward the organization as an institution and to his refraining from conduct that would interfere with its performance of its legal or contractual obligations.

(a)(5) *Safeguards against improper disciplinary action.*—No member of any labor organization may be fined, suspended, expelled, or otherwise disciplined except for nonpayment of dues by such organization or by any officer thereof unless such member has been (A) served with written specific charges; (B) given a reasonable time to prepare his defense; (C) afforded a full and fair hearing.

■ This being a remedial statute, it should be liberally but reasonably applied. In the context of the case at bar, we believe a full and fair hearing requires that an impartial tribunal, selected in accordance with the Union's bylaws, arrive at its decision on the basis of evidence which the accused member can see and hear and has an opportunity to rebut. This court is not empowered to inquire into the merits of the charges brought against the plaintiff, so long as he receives a "full and fair hearing" on them. International Brotherhood of Boilermakers, etc. v. Hardeman, 401 U.S. 233, 91 S.Ct. 609, 28 L.Ed.2d 10 (1971). Because of prejudicial shortcomings in the manner in which the plaintiff was accorded his hearing, however, we find and conclude that the defendant union Local 1091 violated Section 101(a)(5)(C) and that the plaintiff is entitled to relief against this defendant.

The charges were preferred against the plaintiff by Paul Markonni, the International Representative who serviced Local 1091 and was formerly its president. His charges, dated March 10, 1969 are attached hereto and consisted of seven specifications. Plaintiff was unanimously found guilty of all charges at the hearing level but, on appeal to the International, only charge 2 was sustained. It reads as follows:

Dear Sir:

This is to inform you that I am filing charges against a member, George Kiepura, under the provision of the International Constitution—United Steelworkers of America. He is guilty of violating the intent and oath of the International Constitution.

The following are the charges:

\*    \*    \*    \*    \*    \*

2.  He disrupts meetings by being out of order, speaks without being recognized, answers members across the floor and disturbs meeting causing the membership to pull away from the meetings. The membership at the meeting is dropping and many are giving the above as their reason.

\*    \*    \*    \*    \*    \*

■ When these charges were presented to the local union meeting in March 1969, the union president appointed a Trial Committee consisting of himself and eight other members. This number did not comply with Article X, Section 5 of the International's Bylaws for Local Unions which provides for a committee of 3 or 5 members. Since the Local Union had no specific bylaws governing the composition of a trial committee, it was bound to follow the rules laid down by the International. Inasmuch as the 9-member Trial Committee exceeded the number authorized by Article X, Section 5 by at least 4 and as many as 6 members, plaintiff was deprived of a properly constituted tribunal to hear the charges against him.

■ The Trial Committee itself was not composed in a manner assuring the plaintiff the "fair hearing" to which he was entitled under Section 101(a)(5). In addition to himself, the president appointed two other officers of the local, a member of the Union's Executive Committee, the Chairman of the Steward Committee, a steward, one grievance committeeman and two "rank and filers." In view of the fact that plaintiff was disciplined partly for his conduct at union meetings, and that he had been a candidate for union office and planned to be again, the elected officers and those appointed by them could hardly be considered impartial or disinterested members of a trial committee. Although the size and composition of the Trial Committee was not objected to at the Union meeting where it was appointed, it was objected to by the plaintiff

before its hearings began. This court does not have the affirmative authority to determine the composition of the Trial Committee, but we do have the duty to decide when it is improperly constituted. This is such a case. Cf. Falcone v. Dantinne, 420 F.2d 1157 (3rd Cir. 1969).

One deficiency in appointing a committee composed largely of officers of the Local on charges of this kind is that they will inevitably have difficulty in deciding the matter on evidence brought out at the hearing, since some of them were witnesses of the alleged offenses. As it turned out, the Trial Committee admittedly did not base its decision on evidence taken at the hearing, but on what the members knew about the plaintiff's conduct. No evidence was taken in support of the charges other than a reading of them. Since the members of the Trial Committee did not testify, plaintiff had no way to cross examine them and no way to present specific evidence to attempt to refute what may have been in their minds.

As a further illustration, charge No. 3 involved an inquiry which the plaintiff made to a company representative concerning why, as an accredited observer, he was not admitted at a union election. In order to evaluate this charge, a member of the Trial Committee interviewed a Company representative out of the presence of the plaintiff and reported his findings *in camera* to the Trial Committee. This was the sole basis of the finding of guilty on charge No. 3. Since no evidence of any meaningful kind was taken at the Trial Committee hearing, the finding of guilty on all of the charges was made either on the basis of the Committee members' personal knowledge or on facts *de hors* the trial record. The failure to take evidence on any of the charges deprived the plaintiff a full and fair hearing. International Brotherhood of Boilermakers, etc. v. Hardeman, *supra* p. 990.

■ Plaintiff offered to supply a court reporter at the hearing at his own

expense. We believe this was a reasonable request which should have been granted. The union constitution provides for a 4-step appeal procedure up to the International Convention, and the plaintiff should have been given an opportunity to make his record for this purpose. In view of the remedy now provided by the Labor-Management Reporting and Disclosure Act, a stenographic record of the hearings would have greatly facilitated the court, since much of the evidence in this case was an attempt to reconstruct what took place at a hearing almost four years ago. We do not hold that the use of a court reporter is a necessary element of a "full and fair hearing", but we do hold under the circumstances of this case that the refusal to allow the plaintiff to supply a court reporter at his own expense was an abuse of discretion which did tend to deprive him of such a hearing.

Because of the defects in the original hearing, the remaining issues in this case are not of controlling importance to the decision. In order to complete the record, however, we will rule on them as follows:

■ 1. Although the charges of March 10, 1969 lack specificity, we believe that they fulfilled the requirements of Section 101(a)(5)(A) of the Act and that plaintiff was given adequate notice of them and a reasonable time to prepare his defense. Because of the time limit for filing charges (International Bylaws, Article X, Section 2), the charges were actually more specific than appeared from the face of the attached written notice, and plaintiff was not unfairly taken by surprise or deprived of the opportunity to present witnesses (except, as mentioned above, to the extent that the charges were decided on the undisclosed personal knowledge of the members of the Trial Committee).

■ 2. The charge upon which plaintiff was ultimately found guilty is one which, if properly tried, could justify the result reached. This court does not sit in judgment on the reasonableness of the union rules and constitution or the way in which they conduct the meetings of their membership. Cf. International Brotherhood of Boilermakers, etc. v. Hardeman, *supra* p. 990.

■ 3. For much the same reason, the findings of the Trial Committee are sufficient and their affirmance at a special union meeting on April 23, 1969 by a standing vote is not a violation of the statute. Although the conduct of this meeting did not satisfy the requirements of a "full and fair hearing", ratification by the membership is not required by Section 101(a)(5). It is merely an additional protection afforded by the Union's procedure, not by statute. Plaintiff therefore was not deprived of any statutory rights at that stage.

■ 4. The appeal steps followed after the union meeting are likewise not required by the statute and therefore do not afford any basis for relief. Not only is an appeal superfluous to the statutory requirement of a "full and fair hearing" but also these steps appear from the facts to have been conducted in accordance with the union bylaws. The union has contended that the hearing before an "International Commission" was a trial *de novo*, which of course could make this step subject to the "full and fair hearing" requirement of Section 101(a)(5). However, none of the parties treated this as a trial *de novo* at the time, and it is not provided for in the Constitution or Bylaws. Therefore we find and conclude that it is not subject to the requirements of the statute. The same conclusion follows with respect to the appeal to the International Executive Board and to the Convention of the International Union, both of which affirmed the International Commission's finding of guilty on charge No. 2 only.

■ 5. Plaintiff was found guilty of disrupting union meetings and thereby causing the membership to lose interest in attending them. Since the local union did not determine plaintiff's guilt in the manner required by Section 101(a)(5), it has in effect interfered with

his "Freedom of Speech and Assembly" as guaranteed by Section 101(a)(2) of the Act. On the facts adduced by the evidence, however, we find that the local union was attempting to enforce reasonable rules and regulations, which it had the right to do under Section 101(a)(1) and (2). Nor do we find any violation of the statute by the International Union, and judgment should be entered in its behalf on the Complaint.

Since the International Bylaws provide a 60 day limit for the filing of charges, we do not believe that this matter should be remanded to the union for further hearings, nor does the Labor-Management Reporting and Disclosure Act provide for such a procedure. Plaintiff's statutory rights have been violated, and the controversy should end here.

It is therefore ordered, adjudged and decreed that judgment be and it is entered in behalf of the plaintiff, and Local Union 1091 or its successor is directed to restore him to full membership status as of October 31, 1969.

It is further ordered, adjudged and decreed that this case will be called on Friday, March 16, 1973 at 10 a. m. to set a date for a hearing on damages and such other matters as may remain to be decided in this case.

### APPENDIX

March 10, 1969

Mr. Richard Bennett, Rec. Sec.
USA, LOCAL UNION #1091
2141 Market
Blue Island, Illinois

Dear Sir:

This is to inform you that I am filing charges against a member, George Kiepura, under the provision of the International Constitution-United Steelworkers of America. He is guilty of violating the intent and oath of the International Constitution.

The following are the charges:

1. He asks questions and makes statements, at regular monthly meetings, which are stated in such a way as to make officers, grievancemen and stewards guilty of some wrong doing where there isn't any wrong doings. This is implication by tricky accusation. This is unionism at its worst. This is destructive union practices and not constructive union practices which we are all pledged to do.

2. He disrupts meetings by being out of order, speaks without being recognized, answers members across the floor and disturbs meeting causing the membership to pull away from the meetings. The membership at the meetings is dropping and many are giving above as their reason.

3. He meets with the Company and demands that the Company do certain things involving all of the membership which he does not have the right or authority to, he doesn't have the right to represent the membership, this is a violation of the Constitution—this is bad Union practice.

4. He protests most union action in elections without foundation and has never proven a point or a thing. This is costly to the membership, this is time consuming to the officials. He questions cost and at the same time is the cause of it. His dues would have to be increased many times to pay his own way on things stated above.

5. He was part of a contract violation in which he was the member involved. He was transferred to another department and senior employees were laid off. The officer involved in this violation was disciplined for his action. This is the type of person we have, he doesn't believe in Unionism or Brotherhood when he is involved.

6. He went outside the local union to agitate against the local union #1091 on a point which is a local

matter, the procedure of electing the Grievance Committee body.

7. He doesn't believe in or will not accept the concept in Organizational promotion where seniority and ability are factors, he believes in pressure to get his way or destroy. This is Unionism on the lowest level.

I am requesting that you notify your president of the above charges and that he complies with Article XIII of the International Constitution and I will present my facts concerning the above charges to the Trial Committee.

(Signed)
Paul Markonni, Member
United Steelworkers of America
Local Union #1091